# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE WOODWARD | : | |
| | : | No. |
| v. | : | |
| | : | **JURY TRIAL DEMAND** |
| THE BEISTLE COMPANY | : | |

## CIVIL ACTION COMPLAINT

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, et seq.  This Complaint has been filed within 90 days after issuance of a Notice of Right to Sue by the EEOC which occurred on October 14, 2021.

2.    Pursuant to 28 U.S.C. § 1391, venue is properly laid in this judicial district because all off the acts and/or omissions giving rise to the claims set forth herein occurred in this Judicial District and Defendant is located in this Judicial District.

### PARTIES

3.    Plaintiff, Jamie Woodward, is an adult female individual who resides at 440 East King Street, Shippensburg, PA 17257.

1

4.   Defendant, The Beistle Company, is a corporation with a principal place of business located at 1 Beistle Plaza, Shippensburg, PA 17257.

5.   Defendant employs more than 100 people.

6.   At all times material hereto, Defendant acted through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

7.   On or about March 2, 2020, Plaintiff commenced employment with Defendant as a production worker.

8.   At all times material hereto, Plaintiff's performance was excellent.

9.   Plaintiff had been sexually harassed by male co-workers from the time she was first employed through her last day of work with defendant.

10.   Plaintiff was being sexually harassed by her co-workers, Dave Gilrice (Male) and Zack Long (Male) in that they said sexual things to, and made sexual advances towards, Plaintiff every workday—all day long.

11.   Plaintiff, who was afraid to report the sexual harassment, went to HR in July 2020 and asked for a transfer

reporting that she was having issues and did not feel comfortable.

12.    The HR representative refused to transfer Plaintiff and did not ask for any details as to what issues she was having or why she did not feel comfortable.

13.    Thereafter, Plaintiff asked for a transfer on multiple occasions without providing information regarding the sexual harassment.

14.    In about the start of December 2020, Plaintiff complained to Aaron Horn (Male), the Head Supervisor of Dept. 2, that her co-workers, Dave Gilrice (Male) and Zack Long (Male) made inappropriate sexual comments that made her feel uncomfortable.

15.    Mr. Horn promised to "take care of it," but the daily and constant sexual harassment never stopped.

16.    On April 26, 2021, Mr. Gilrice started talking to Plaintiff inappropriately as per the norm.

17.    On that particular day, Mr. Gilrice was pointing out the way Plaintiff was dressed and the way she was bending herself over a table and he told Plaintiff that her shorts were not short enough and that he wanted to see "a little ass."

18.    Plaintiff, who was frustrated that management did nothing to help her, engaged in self-help and told Mr. Gilrice

that he needed to keep his mouth shut and that he was being
inappropriate and rude.

19.   Mr. Gilrice incredibly argued back to Plaintiff, and
Plaintiff was so fed up, she told Mr. Gilrice that she would
"kick his ass."

20.   Plaintiff is only five foot two inches and 130 pounds
and Mr. Gilrice is about six feet tall and over 210 pounds, so
Plaintiff was not a physical threat to Mr. Gilrice, but
Plaintiff wanted to sound tough to try to get him to stop
harassing her.

21.   Plaintiff thereafter complained again to Mr. Horn, by
telling him specifically what occurred earlier that same day--
that Mr. Gilrice made sexual comments about the way she was
dressed and the way she was bending herself over a table.

22.   Plaintiff explained to Mr. Horn that Mr. Gilrice's
sexual comments continued to make her feel uncomfortable.

23.   Mr. Gilrice saw Plaintiff talking to Mr. Horn and he
looked at Plaintiff appearing worried that she was reporting his
conduct to Mr. Horn.

24.   Plaintiff was pulled into the office several minutes
later by Mr. Horn and Karen (from HR), and Karen told Plaintiff
that it was reported that she threatened Mr. Gilrice.

25.    Karen asked Plaintiff what happened, and she told her about what Mr. Girice said to her and explained that she was trying to get him to stop making sexual comments that made her uncomfortable at the workplace.

26.    On April 27, 2021 (the next day), Plaintiff was called by Russ (Male), Vice President of Defendant, who informed her that she was terminated.

27.    Plaintiff told Russ about the sexual comment made by Mr. Gilrice and why she said what she said, but Russ claimed he had no knowledge of Plaintiff's complaints of sexual harassment and he did not retract the termination.

28.    Defendant's proffered reason for Plaintiff's termination was mere pretext designed to mask defendant's discriminatory motivation.

29.    Mr. Horn and Karen recommended that Plaintiff be terminated simply to sweep her complaint of sexual harassment under the rug.

30.    Mr. Horn and Karen did not provide Russ with the full background of what had occurred when they recommended her termination based upon her stating to Mr. Gilrice that she would kick his ass.

31.    Russ accepted Mr. Horn and Karen's recommendation to terminate her employment without question or further inquiry.

32.   Russ did not care about the sexual harassment that led Plaintiff to saying she would "kick his ass."

33.   Defendant and its agents acted as a cat's paw and rubber stamp for Mr. Horn and Karen's decision to terminate Plaintiff from her employment with Defendant.

34.   The true reason why was Plaintiff was terminated on April 27, 2021, was because she complained in good faith of sexual harassment.

35.   Plaintiff went to Mr. Horn first and advised him of a very serious accusation of sexual harassment, yet Mr. Horn ignored Plaintiff's complaint and disingenuously terminated her because of an obviously non-threatening statement used by Plaintiff to dissuade further sexual harassment.

36.   Thus, defendant's actions violated Title VII.

37.   Defendant and its agents, Mr. Horn, Karen, and Russ acted at all times material hereto acted with their authority to hire, fire and discipline.

38.   Defendant and its agents undertook a course of conduct toward Plaintiff and terminated her because she complained of sexual harassment.

39.   In addition, Mr. Horn allowed the daily sexual harassment to continue between late-December 2020 and April 26, 2021, despite Plaintiff's detailed complaints to him explaining

that she was being sexually harassed by two male employees daily.

40.   Defendant's agents acted against Plaintiff in a bigoted, willful, and malicious manner.

41.   Plaintiff was subjected to humiliation, embarrassment, and mental anguish because of the hostile work environment which was perpetuated by defendant's inaction and the unlawful retaliatory termination of her employment.

42.   Defendant unlawfully failed to take measures to stop regular and pervasive hostile work environment sexual harassment for a period of about four months and unlawfully terminated Plaintiff's employment, all in violation of Title VII.

43.   Defendant and its management employees acted with deliberate indifference to Plaintiff's civil rights.

44.   Defendant and its management employees acted willfully and maliciously and are liable to Plaintiff for punitive damages as a result.

45.   Plaintiff seeks lost pay, benefits, lost future pay, compensatory damages for pain and suffering, punitive damages, and attorneys' fees and costs.

## COUNT I-- Violation of Title VII—Hostile Work Environment
### Sexual Harassment

46. The foregoing paragraphs are incorporated herein as if set forth in full.

47. By and through its conduct, Defendant violated Title VII by intentionally discriminating against plaintiff and by showing deliberate indifference to Plaintiff's civil rights by failing to take appropriate action to stop or otherwise mitigate the regular and pervasive sexual harassment endured by Plaintiff at the workplace during the aforementioned time period.

## COUNT II-- Title VII—Retaliation

48. The foregoing paragraphs are incorporated herein as if set forth in full.

49. By and through its conduct, defendant violated Title VII by intentionally discriminating against plaintiff and by terminating her in retaliation for making good faith complaints of sexual harassment.

WHEREFORE, Plaintiff demands that judgment be entered in her favor on Counts 1 and 2 against Defendant for lost pay, lost bonuses, lost benefits, other financial losses, compensatory damages for emotional pain and suffering, punitive damages,

attorneys' fees, costs, interest, and any other relief that this

Honorable Court deems to be fair and proper.

Richard B. Bateman, Jr., Esquire
21 West Second Street
Suite 300
Media, PA
610.566.3322 (tel)
610.548.9986 (fax)
rbateman@batemanlawoffice.com
Attorney for Plaintiff